UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Stephen W. Carlson,** | Civil No. 02-4084 (DWF/SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **American Express Financial Advisors, American Express, and Kelly Services** | |
| **Defendant.** | |

Stephen W. Carlson, Pro se

Julie Anne Fleming-Wolfe, Esq., on behalf of Defendant American Express Financial Advisors, Inc.

Dean Allen LeDoux for Kelly Services, Inc.

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendant American Express's Motion for Summary Judgment (Doc. No. 161), Defendant Kelly Services' Motion for Summary Judgment (Doc. No. 170), Plaintiff's Motion for Summary Judgment (Doc. No. 177), Plaintiff's Motion for Default Judgment (Doc. No. 179), and Plaintiff's Motion to Certify Class Action (Doc. No. 181). This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth below, this Court recommends granting Defendants' motions and denying Plaintiff's motions. The Court recommends dismissing all of Plaintiff's claims.

**I.      BACKGROUND**

Plaintiff Stephen Carlson (Carlson) worked for Kelly Services, a temporary staffing agency, in the fall of 1997. Kelly Services placed Carlson with American Express Financial Advisors (AEFA) on a temporary assignment from October 1997 through mid-December 1997. (LeDoux Aff. Ex. 1 at 267-69.) On December 15, 1997, AEFA hired Carlson as a permanent employee. (Id. at 267, 270-71.) Thereafter, Carlson worked for AEFA until June 8, 2001. (Id. at 270-71.) Between December 15, 1997 and June 8, 2001, Carlson was paid directly by AEFA for his work. (Id. at 271.) On February 7, 2001, AEFA informed Carlson his position would be eliminated. (Fleming-Wolfe Aff. Ex. 1, Part 8 at 144-45.) Carlson worked at AEFA until June 8, 2001. (LeDoux Aff. Ex. 1 at 270, 273.) After leaving AEFA, Carlson reapplied at Kelly Services and went back to work for Kelly on June 12, 2001. (Id. at 187-89.) Carlson remained employed by Kelly Services until he was fired in late December 2001. (Id. at 208.)

On February 8, 2002, Carlson filed a charge with the Minnesota Department of Human Rights (MDHR) and Equal Employment Opportunity Commission (EEOC) in which he claimed American Express discriminated against him on the basis of his sex, age, and marital status. (Fleming-Wolfe Aff. Ex. 13.) Carlson charged that American Express employed him from December 15, 1997 to June 8, 2001. (Id.) Carlson's charge did not mention Defendant Kelly Services. On June 26, 2002, the MDHR dismissed Carlson's charge against AEFA as follows:

> Minnesota Statutes section 363.06, subd. 3, establishes that a claim of unfair discriminatory practices must be filed within one year after the occurrence of the practice. To be timely filed, this charge had to have been filed within one year of the notice of termination given the charging party on February 7, 2001. Charging party filed a charge of discrimination with the Minnesota Department of Human Rights on February 8, 200[2].

>This charge is dismissed because its untimely filing places it outside the jurisdiction of this Department. Charging Party may wish to consult with private legal counsel about pursuing this matter under other legal causes of action with longer statutory filing periods.

(Fleming-Wolfe Aff. Ex. 13.) The EEOC adopted the MDHR's findings, dismissed the action, and issued Carlson a "right-to-sue" letter on July 18, 2002. (See Attachment to Doc. No. 4.)

Carlson filed a Complaint in federal court on October 15, 2002. (Doc. No. 1.) He alleged disparate impact and treatment on the basis of his gender, age, and marital status pursuant to the Minnesota Human Rights Act (MHRA), Title VII of the Civil Rights Act of 1964 (Title VII), and the Age Discrimination in Employment Act of 1967 (ADEA). (Id.) He also alleged violations of the Fair Labor Standards Act (FLSA) for failure to pay overtime against Defendant AEFA and American Express.[1] Carlson's Complaint did not name Kelly Services as a defendant. (Id.) On November 12, 2002, Carlson filed an Amended Complaint (hereinafter First Amended Complaint) in which he added Kelly Services as a Defendant. (Doc. No. 4.) Carlson's November 12, 2002 First Amended Complaint is the operative complaint in this action.

There are five motions presently before the Court: AEFA's Motion for Summary Judgment (Doc. No. 161), Kelly Services' Motion for Summary Judgment (Doc. No. 170), and Carlson's Motions for Summary Judgment (Doc. No. 177), Default Judgment (Doc. No. 179), and Class Certification (Doc. No. 181). Each motion is discussed, and a recommendation provided, below.

---

[1] Hereinafter, both American Express Financial Advisors and its parent company, American Express, are referred to as AEFA.

3

## II.     DISCUSSION

### A.     <u>Standard of Review</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In response to a motion for summary judgment, "the non-moving party" must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c) & (e)). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). The evidence and all reasonable inferences are viewed in the light most favorable to the non-moving party. <u>Dorsey v. Pinnacle Automation Co.</u>, 278 F.3d 830, 834-35 (8th Cir. 2002). A dispute about material facts is genuine only "if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." <u>Landon v. N.W. Airlines, Inc</u>. 72 F.3d 620, 624 (8th Cir. 1995). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," then Rule 56(c) requires the entry of summary judgment against such party. <u>Celotex</u>, 477 U.S. at 322-23.

### B.     <u>Exhaustion of Administrative Remedies for Title VII and ADEA Claims</u>

Title VII prohibits discrimination in employment based on a person's sex. 42 U.S.C. § 2000e-2(a). But Title VII requires that a complaining employee follow an administrative procedural

4

regimen before suing his employer. Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). Exhaustion requires that the employee (1) file a timely discrimination claim with the EEOC specifying the facts and nature of the claim, and (2) receive a right-to-sue letter. 42 U.S.C. § 2000e-5(b), (c), (e) (2000).

The exhaustion requirement applies with equal force to represented and pro se plaintiffs. Williams, 21 F.3d at 223 (affirming the district court's grant of summary judgment for the employer against the pro se employee). "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Id. (citing Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985)). Yet, "[w]hen an employee seeks judicial relief for incidents not listed in [her] original [administrative] charge . . . the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the [administrative] charge." Anderson v. Block, 807 F.2d 145, 148 (8th Cir. 1986) (alterations in original).

The ADEA prohibits discrimination in employment on the basis of age in certain circumstances. Exhaustion of remedies is also required prior to filing an ADEA claim. See Dorsey, 278 F.3d at 835.

Unlike Title VII and the ADEA, the MHRA does not require exhaustion of administrative remedies prior to filing suit. See Minn. Stat. § 363A.28, subd. 3 (2004).

**C.    Time for Filing Charges and Suits under MHRA, Title VII, ADEA, and FLSA**

An administrative charge or lawsuit brought pursuant to the MHRA must be filed within one year after the occurrence of the alleged discriminatory practice. Id. The MHRA also provides that a

party must file his civil action within forty-five days after receipt of notice of the dismissal of an administrative charge by the MDHR. Minn. Stat. § 363A.33, subd. 1(1).

In Minnesota, claims brought pursuant to the ADEA or Title VII must be first lodged with the EEOC or with the MDHR (which cross files federal law charges with the EEOC under a workshare agreement) within 300 days after the alleged unlawful practice occurred. See 29 U.S.C. § 626(d)(2); 42 U.S.C. § 2000e-5(e). Furthermore, the ADEA and Title VII require that a plaintiff file his civil action against the respondent named in the charge within ninety days after receipt of a "right-to-sue" letter from the EEOC. See 29 U.S.C. § 626(e); 42 U.S.C. § 2000e-5(f)(1).

All claims brought pursuant to the FLSA must be "commenced within two years after the cause of action accrued," unless the violation was "willful." 29 U.S.C. § 255(a).

### III.   COURT'S RECOMMENDATION

The Court recommends granting Defendants' motions, denying Plaintiff's motions, and dismissing all of Plaintiff's claims with prejudice.

####    A.   **Defendant AEFA's Motion for Summary Judgment**

The Court recommends granting Defendant AEFA's Motion for Summary Judgment (Doc. No. 161) for the reasons set forth below.

#####       1.   **Age, Gender, and Marital Status Claims**

Carlson filed his discrimination charge with the MDHR one day after the expiration of the statute of limitations period set forth in the MHRA, codified at Minn. Stat. § 363.06, subd. 3, and with the EEOC sixty days after the expiration of the statute of limitations period for Title VII claims, codified at 42 U.S.C. § 2000e-5(e). The Court finds that Carlson failed to properly exhaust his administrative

remedies as to his federal claims and failed to file his charge or civil action as to his state law claims within the time period allowed under the MHRA. To the extent the time periods above could be equitably tolled, Carlson has not shown cause why they should be equitably tolled. Thus, the Court recommends granting AEFA's Motion for Summary Judgment as to these claims.

### 2. Fair Labor Standards Act Claim

In addition to his discrimination claims, Carlson also claims that AEFA failed to pay him overtime as required by the Fair Labor Standards Act (FLSA) the relevant text of which is codified at 29 U.S.C. § 207(a)(1). Carlson testified that all of the unpaid overtime he claims was for work performed before August 16, 2000. (Fleming-Wolfe Aff. Ex. 1, Part 10 at 165.) The present action was filed and served on AEFA on November 12, 2002. (Doc. Nos. 4-5.) The Court finds that the action was not commenced within two years after the cause of action accrued as required by the FLSA. See 29 U.S.C. § 255(a). Therefore, for the FLSA claim to be valid, the violation alleged must have been "willful." (Id.) The Court finds that Carlson has not presented any evidence to support his claim that AEFA willfully withheld overtime payments from him. Nor has Carlson shown cause why the time period could be equitably tolled for such a period of time as to excuse his tardy filing.

Moreover, even if Carlson's FLSA claim were not time-barred, Carlson's claim would fail on the merits because he kept no contemporaneous records of his alleged overtime work hours nor did he report any overtime to AEFA on his time records for the relevant period. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946) (noting that "an employee has carried his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and

reasonable inference.")

Based upon the above, the Court finds Carlson's FLSA claim against AEFA/American Express is time-barred and fails on the merits and recommends granting AEFA's Summary Judgment Motion as to Carlson's FLSA claim.

### 3. Other Claims

Finally, to the extent that Carlson represents that he has a claim for retaliation or harassment or similar claims against AEFA, the Court finds such claims were not properly exhausted at the administrative level for the same reasons his gender discrimination claims were not properly exhausted and recommends granting AEFA's Summary Judgment Motion as to any such claim.

### B. Defendant Kelly Services' Motion for Summary Judgment

The Court recommends granting Defendant Kelly Services' Motion for Summary Judgment (Doc. No. 170) for the reasons set forth below.

Kelly Services placed Carlson with AEFA on a temporary assignment from October 1997 through mid-December 1997. (LeDoux Aff. Ex. 1 at 267-69.) On December 15, 1997, AEFA hired Carlson as a full-time, permanent employee. (Id. at 267, 270-71.) Thereafter, Carlson worked for AEFA until June 8, 2001. (Id. at 270-71.) Between December 15, 1997 and June 8, 2001, Carlson was paid directly by AEFA for his work. (Id. at 271.)

Sixteen of the Seventeen counts in Carlson's Amended Complaint allege violations by AEFA employees against Carlson (Counts I through XIV and XVI through XVII). (Doc. No. 4 at 5-30.) Kelly Services is not even mentioned in most of these sixteen counts, much less are violations by Kelly Services alleged. (Id.) Carlson attempts to link Kelly Services to the sixteen counts leveled against

AEFA by claiming that Kelly Services "put [him] in a discriminatory position." (LeDoux Aff. Ex. 1 at 273.) Carlson admits he never talked to anyone at Kelly Services about his position at AEFA between December 15, 1997 and June 8, 2001. (Id. at 270.) Carlson admits that Kelly Services employees did not harass him during his permanent employment at AEFA or tell AEFA employees to harass him. (Id. at 273-74.)

Nor has Carlson presented any evidence that Kelly Services employed him from December 15, 1997 through June 8, 2001 either solely or in some joint employment arrangement with AEFA. In fact, Carlson admits that AEFA, not Kelly Services, paid his wages during this time period. (Id. at 271.) Compensation is an "essential condition to the existence of an employer-employee relationship." Graves v. Women's Prof'l Rodeo Ass'n, Inc., 907 F.2d 71, 73 (8th Cir. 1990). The Court finds that Kelly Services did not employ Carlson from December 15, 1997 through June 8, 2001 either solely or in concert with AEFA. In the present circumstances, the lack of an employee-employer relationship between Carlson and Kelly Services prevents Carlson from succeeding against Kelly Services on his Counts I through XIV and XVI through XVII as a matter of law. See § 2000e(f); 42 U.S.C. § 2000e-2. The Court finds that the claims levied against AEFA as Carlson's employer cannot, under any circumstances, result in liability against Kelly Services merely because Kelly Services placed Carlson with AEFA for temporary work from October 1997 through mid-December 1997 after which Carlson left Kelly Services and accepted an offer of permanent employment from AEFA.

Carlson does allege disparate treatment by Kelly Services in Count XV of his First Amended Complaint. (Doc. No. 4 at 20.) Carlson alleges Kelly Services unlawfully terminated him in December 2001, after Kelly Services re-hired him following the elimination of his position at AEFA. (Id.)

Carlson never filed a discriminatory practices charge against Kelly Services with the EEOC or the MHRD in connection with his firing. Nor did Carlson file this lawsuit within ninety days of his receipt of the "right to sue" notice from the EEOC after the EEOC dismissed the charges he brought against AEFA. As a result, Carlson's claims are barred for failing to exhaust his administrative remedies and for failing to timely file this lawsuit.

Finally, to the extent that Carlson represents that he has claims for retaliation or harassment against Kelly Services the Court finds there is no evidence in the record to support such claims, and if there was such evidence, the claims would be barred for the same reasons his gender discrimination claims are barred.

Therefore, the Court recommends that Kelly Services' Motion for Summary Judgment (Doc. No. 170) be granted.

### C. Plaintiff's Motion for Summary Judgment Against Defendants

Because the Court recommends granting Defendants' summary judgment motions and dismissing Carlson's action in its entirety, the Court also recommends denying Carlson's Motion for Summary Judgment (Doc. No. 177).

### D. Plaintiff's Motion for Default Judgment Against Kelly Services

On September 1, 2004, Carlson filed a Motion for Default Judgment against Kelly Services for not timely filing its Answer in this matter. (Doc. No. 179.) The history of Carlson's efforts to secure a default judgment against Kelly Services is lengthy and dates back to August 2003. On August 20, 2003, Carlson brought a motion for default judgment for essentially the same reasons alleged in the motion now before the Court, filed September 1, 2004. (Doc. No. 35.) The district court denied this

motion. (Doc. No. 46.) All of Carlson's motions for reconsideration or vacation of the district court's order and his other motions concerning the underlying dispute have been rejected. (See e.g., Doc. Nos. 66, 99,121, 198, 212.)

The Court finds that Kelly Services timely filed an Answer in this matter on May 26, 2004 (Doc. No. 95), and Carlson's most recent effort to secure default judgment against Kelly Services is without merit. Therefore, the Court recommends that Carlson's Motion for Default Judgment (Doc. No. 179) be denied.

### E.     Plaintiff's Motion to Certify Class Action

After Defendants moved for summary judgment, Carlson filed a motion for class certification. (Doc. No. 181.) He seeks to certify the following class: "former, current and potential male hires at Defendant AEFA nationally through Kelly Services nationally, in either temporary or temp-to-hire positions and who are skilled as secretaries and administrative assistants." (Carlson Reply Defs.' Mem. Opp. Mot. Class Cert. at 1.) In order to certify a class of plaintiffs, Carlson must meet the prerequisites of Federal Rule of Civil Procedure 23 that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." The party seeking to represent the class bears the burden of establishing that the prerequisites have been met. Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994).

The Court finds that Carlson has not met his burden for the following reasons. First, Carlson has produced no evidence that his claims are typical of those of the class he seeks to certify as required

by Rule 23(a)(3). Second, contrary to the requirement of Rule 23(a)(4), Fed. R. Civ. P., the Plaintiff, as the representative party, will not fairly and adequately protect the interests of the class that they seek to have certified. Rule 23(a)(4) provides that a class action may be maintained only if "the representative parties will fairly and adequately protect the interests of the class." The requirement involves two separate issues—the adequacy of the representative and the adequacy of counsel. Kuper v. Quantam Chem. Corp., 145 F.R.D. 80, 82 (S.D. Ohio 1992). In order to protect the rights of absent class members, the representative's counsel must be qualified, experienced and generally able to conduct the litigation. CV Reit, Inc. v. Levy, 144 F.R.D. 690, 698 (S.D. Fla. 1992). Generally, pro se litigants are not qualified to conduct litigation on behalf of others in a class action suit. See e.g., Ziegler v. Michigan, 90 Fed. Appx. 808, 810, 2004 WL 162545, at *2 (6th Cir. 2004); Rutledge v. Lane, 215 F.3d 1330, 2000 WL 689191, at * 4 (7th Cir. 2000); Fymbo v. State Farm Fire and Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000); Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam); Allnew v. City of Duluth, 983 F. Supp. 825, 832 (D. Minn. 1997). The Court sees no reason to depart from the general rule in this case. Carlson has proceeded pro se in this matter. Having reviewed the full record of the proceedings in this action, the Court is not satisfied that Carlson would meet the adequacy of counsel requirement were this case certified.

     Based upon the above findings, the Court recommends denying Carlson's Motion to Certify Class Action (Doc. No. 181).

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

 **1.** Defendant American Express's Motion for Summary Judgment (Doc. No. 161) be **GRANTED**;

 **2.** Defendant Kelly Services' Motion for Summary Judgment (Doc. No. 170) be **GRANTED**;

 **3.** Plaintiff's Motion for Summary Judgment (Doc. No. 177) be **DENIED**;

 **4.** Plaintiff's Motion for Default Judgment (Doc. No. 179) be **DENIED**;

 **5.** Plaintiff's Motion to Certify Class Action (Doc. No. 181) be **DENIED**; and

 **6.** All of Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

Dated: March 29, 2005

                s/ Susan Richard Nelson
                SUSAN RICHARD NELSON
                United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by April 15, 2005 a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.